IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBBIE SCARDAMAGLIA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN,[1] ) <br> ACTING COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | Case No. 13 C 5325 <br><br> Magistrate Judge <br> Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant Debbie Scardamaglia ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. *See* [ECF No. 8].

This matter is before the Court on the parties' cross-motions for summary judgment. *See* [ECF Nos. 14, 18]. The Court heard oral argument on the cross-motions on November 9, 2015 [ECF No. 24]. For the reasons discussed herein, Claimant's Motion for Summary Judgment [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 18]

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

is denied. This matter is remanded to the Social Security Administration ("SSA") for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

Claimant filed applications for disability insurance benefits and supplemental security income on February 10, 2009, alleging a disability onset date beginning August 1, 2007. R. 137. The SSA denied the applications initially on May 5, 2009, and upon reconsideration on October 9, 2009. R. 156-59, 162-69. Claimant then requested a hearing before an administrative law judge ("ALJ"), which was held on August 11, 2010. R. 137. On October 25, 2010, the ALJ issued a written decision, finding Claimant not disabled under the Social Security Act. R. 134-49. Claimant filed a request for review of the ALJ's decision before the Appeals Council on March 11, 2011. R. 225. The Appeals Council vacated the ALJ's decision on July 13, 2011, and ordered a new hearing. R. 150-54. Claimant appeared and testified at a second hearing before the ALJ on January 19, 2012, and she was represented by counsel. R. 18. Dr. Ashok Jilhewar, a medical expert ("ME"), and James Breen, a vocational expert ("VE"), also testified at the hearing. *Id.*

The ALJ issued a second written decision on April 2, 2012, again finding Claimant not disabled under the Social Security Act. R. 15-41. At step one of the required five-step test for evaluating disability, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of August 1, 2007. R. 22. At step two, the ALJ found that Claimant had the severe impairments of generalized body pains, questionable systemic lupus, lumbar degenerative disc disease, and left hip tendonitis/bursitis. *Id.* At step three, the ALJ determined that none of Claimant's impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 26.

Before proceeding to step four of the sequential analysis, the ALJ found Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 404.967(a), except that Claimant could stand for thirty minutes at one time, with walking and/or standing comprising a total of two hours during an eight-hour workday, and that Claimant must be able to sit and stand at will due to her left hip symptoms. R. 27. The ALJ further determined that Claimant could frequently climb ramps and occasionally climb stairs, but could never climb ladders, ropes, or scaffolds; could occasionally balance and stoop but never kneel, crouch, or crawl; could frequently, but not constantly, perform bilateral handling and fingering; must avoid all exposure to dangerous machinery and unprotected heights; and should avoid concentrated exposure to respiratory irritants. *Id.*

At step four, the ALJ found Claimant was unable to perform any of her past relevant work. R. 32. At step five, however, the ALJ determined Claimant could perform other jobs that existed in significant numbers in the national economy and, therefore, concluded Claimant was not under a disability as defined in the Social Security Act at any time from her alleged onset date to the date of the ALJ's second written opinion. R. 33-34.

The Appeals Council denied Claimant's request for review on May 29, 2013, leaving the ALJ's decision as the final decision of the Commissioner. R. 1-6. Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. TREATMENT BACKGROUND

Claimant's relevant treatment background is summarized below. In October 2008, when she was 44 years old, Claimant sought treatment from Dr. Melody Derrick, a primary care physician, reporting generalized joint pain and other symptoms. R. 597. Dr. Derrick noted

3

tenderness in Claimant's abdomen and left hip, as well as decreased range of motion and decreased strength in her left hip. *Id.* She diagnosed Claimant with rheumatoid arthritis and referred her to Dr. Francis Lichon, a rheumatologist, for specialized treatment. R. 595.

Claimant first saw Dr. Lichon in November 2008, and he remained her treating rheumatologist through the date of the second administrative hearing more than three years later. Claimant had dozens of visits with Dr. Lichon during that time, seeing him essentially on a monthly basis. After Claimant's initial visit, Dr. Lichon noted Claimant's blood tests showed a positive ANA and positive rheumatoid factor, which "could represent an early case of either lupus or rheumatoid arthritis." R. 709. His "gut feeling" was that Claimant had an early case of lupus. R. 710. The record contains a number of pages, some of which are duplicative, of Dr. Lichon's handwritten progress notes documenting his continued treatment of Claimant following that initial exam. R. 838-47, 876-82, 897-905, 1199-1215.

Claimant continued complaining of pain to other medical providers, and radiographs confirmed fluid and mild to moderate tendonopathy in her left hip, disc herniation and a posterior annular tear at L5-S1, central spinal stenosis, and degenerative spinal changes. R. 22. In October 2008, she began physical therapy with Leo Schlee, who noted significant antalgic gait and decreased stride length on the left side, forward trunk lean, and significant muscle and range of motion deficiencies associated with spinal disorders. R. 734-35. Her prognosis was "only fair." R. 735. Claimant underwent another round of physical therapy in June 2009, during which her therapist, Lindsay Bjork, noted Claimant continued to report significant back and hip pain and achieved only "very minimal gains with physical therapy." R. 836. Another physical therapist evaluated Claimant in May 2010, and observed decreased range of motion, strength, flexibility, positional tolerance, and functional mobility. R. 1128. Claimant began yet another round of

4

physical therapy in November 2010, but Ms. Bjork discharged her two months later due to lack of progress. R. 1110. Her prognosis, again, was "fair." R. 1112.

By January 2012, Dr. Lichon diagnosed Claimant with "multiple chronic illnesses," including active lupus, fibromyalgia, chronic fatigue, and degenerative disc disease at the lumbar spine. R. 1262. He opined Claimant was "totally disabled and unable to work." *Id.*

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Rather, the Court's review is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While the ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). At a minimum, the ALJ must articulate her analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary

5

support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

## IV. DISCUSSION

Claimant argues that the decision of the Commissioner should be reversed or remanded because (1) the ALJ did not properly evaluate the opinion of Dr. Lichon, Claimant's treating rheumatologist; (2) the ALJ erred in finding the VE's testimony consistent with the Dictionary of Occupational Titles; (3) the ALJ failed to address some of Claimant's impairments; and (4) the ALJ did not properly evaluate Claimant's credibility. The Court agrees with Claimant that the ALJ did not properly evaluate Dr. Lichon's opinion and failed to consider all relevant evidence, and therefore, remand is appropriate.

Social Security regulations direct an ALJ generally to give more weight to a claimant's treating physicians than the ALJ gives to non-treating physicians such as medical experts and state agency consultants. 20 C.F.R. § 404.1527(c); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). That is because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c). If the treating physician's opinion is well-supported and consistent with other substantial evidence in the record, the regulations direct an ALJ to give that opinion controlling weight. *Bauer*, 532 F.3d at 608 (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006)). If the ALJ does not give controlling weight to a claimant's treating physician, the regulations still require the ALJ to consider various factors in determining what weight, if any, to give to the treating physician's opinions. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). These factors include the length, nature, and extent of the treatment relationship;

6

the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinions. *Id.*

Here, Dr. Lichon was Claimant's treating physician for more than three years prior to the hearing, and he saw her on almost a monthly basis. As a board-certified rheumatologist, Dr. Lichon specializes in treating the medical conditions Claimant alleges prevent her from being capable of work. Even Dr. Jilhewar, the medical expert upon whom the ALJ relied in formulating her decision, agreed that Dr. Lichon generally is more qualified to offer opinions regarding Claimant's medical conditions than he, an internist with no applicable specialty. R. 67 ("but [the] rheumatologist is the expert"); R. 79 ("and he's a rheumatologist, I am not").

The ALJ, however, did not give controlling or even great weight to Dr. Lichon's opinion that Claimant was "totally disabled and unable to work" because she found that Dr. Lichon's opinion "lacks record support and is inconsistent with that of the medical expert as well as the DDS physicians." R. 32. The ALJ instead gave "very substantial weight" to Dr. Jilhewar's opinions because, even though he never examined Claimant and is not a rheumatologist, he "is familiar with the disability program and [ ] had the opportunity to review and evaluate the entire record." R. 32. For the reasons described below, the ALJ's rationale does not pass muster.

**A. The ALJ Erred in Relying Upon the Opinion of the Medical Expert Dr. Jilhewar**

The ALJ committed reversible error in relying upon the opinion of the medical expert Dr. Jilhewar to justify affording no weight to Dr. Lichon's opinion that Claimant is disabled because Dr. Jilhewar did not – and admitted he could not -- evaluate the clinical findings upon which Dr. Lichon's opinion was based. During the hearing, Dr. Jilhewar testified that Claimant was capable of sedentary work. R. 79. He further testified that he could not agree with Dr. Lichon's diagnoses of fibromyalgia and lupus because, according to Dr. Jilhewar, Dr. Lichon's clinical

7

findings did not support those diagnoses. R. 68-69. He explained that, among other things, Dr. Lichon's notes did not contain documentation of fibromyalgia tender points or organ involvement related to lupus. R. 67, 84. He also disagreed with Dr. Lichon's opinion that Claimant was disabled, again citing a lack of clinical findings. R. 79. Importantly, however, Dr. Jilhewar admitted he could not read Dr. Lichon's clinical notes. R. 67, 68, 71, 79, 85. So, he really did not know whether Dr. Lichon's opinion was supported by his clinical findings.

At the outset, the ALJ cannot reject the opinion of a treating physician merely because it is inconsistent with the medical expert's opinions; she is required to point to specific reasons for rejecting the opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). More importantly, however, the ALJ's reliance on Dr. Jilhewar's opinions in discarding the opinion of Dr. Lichon is misplaced because Dr. Jilhewar could not, based on the record available to him, reliably offer an opinion on Claimant's medical conditions. Dr. Jilhewar admitted on multiple occasions that he could not read Dr. Lichon's handwritten notes – the very notes that contained Dr. Lichon's clinical findings. In fact, Dr. Jilhewar explicitly stated, "I cannot understand [the clinical findings] from the notes as they are so *that is the qualification for my testimony, I cannot read any of the notes of Dr. [Lichon]*." R. 67 (emphasis added); *see also* R. 67-68 ("but [the] rheumatologist is the expert and I can't read those [sic] handwriting"); R. 85 ("this doctor's notes are so illegible").

Given that qualification, Dr. Jilhewar really could not say with any certainty whether Dr. Lichon's diagnoses and opinions were, in fact, consistent with his clinical findings. *See* R. 71 ("I do not have the answer because of the absence of documentation unless it is somewhere in

8

illegible handwritten notes"); R. 85 ("I'm not fair in assessing those because of the absence of document [sic] from this doctor, he should always type his records"). Instead, Dr. Jilhewar again qualified his testimony by emphasizing his opinion was based solely on "what I could appreciate from the medical record" – which, by his own admission, was not much. R. 79.

Even the ALJ acknowledged that Dr. Jilhewar's testimony was qualified by the fact that he could not discern Dr. Lichon's clinical findings, pointing out that Dr. Jilhewar "had one hand tied behind his back because he couldn't read those findings." R. 86. And, when Claimant's attorney pressed Dr. Jilhewar on the reasons for his opinions, the ALJ stopped the attorney's cross-examination short, stating, "He immediately said that he could not read those notes from the doctor . . . he's only relying on the readings in this case because we can't read the handwriting from this doctor, so I'm not going to let you go down that route." R. 85-86. Nevertheless, the ALJ adopted Dr. Jilhewar's opinion in lieu of Dr. Lichon's.

While Federal Rule of Evidence 702 and the United States Supreme Court's teaching in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), do not apply to Social Security proceedings directly, Judge Easterbook has made clear that expert opinions in disability adjudications nevertheless must be based on adequate data and methods:

> Rule 702 of the Federal Rules of Evidence provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." This substantially codifies the holdings of *Daubert* . . . and its successors. Rule 702 does not apply to disability adjudications, a hybrid between the adversarial and the inquisitorial models. But the idea that experts should use reliable methods does not depend on Rule 702 alone, and it plays a role in the administrative process because every decision must be supported by substantial evidence. Evidence is not "substantial" if vital testimony has been conjured out of whole cloth.

*Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (internal citations omitted). Dr. Jilhewar stated in no uncertain terms that he could not read Dr. Lichon's clinical findings, which he admitted were crucial to properly evaluate Dr. Lichon's conclusions. Absent that information, Dr. Jilhewar's testimony regarding Dr. Lichon's opinion is not worth much because he could not fully evaluate the facts or data upon which Dr. Lichon's opinion was based.

Dr. Jilhewar's inability to read Dr. Lichon's extensive treatment notes belies the ALJ's conclusion that Dr. Jilhewar "had the opportunity to review and evaluate the entire record" and "provided a reasonable basis for the limitations determined in this case." R. 32. The ALJ's reliance upon Dr. Jilhewar in disregarding Dr. Lichon's opinion that Claimant is disabled, therefore, is not supported by substantial evidence and remand is appropriate.

**B. The ALJ Failed to Consider All Relevant Evidence in the Record**

The ALJ committed further error by failing to consider all relevant evidence in the record, as she is required to do. As discussed above, the ALJ acknowledged during the hearing that neither she nor Dr. Jilhewar could read Dr. Lichon's handwritten notes. R. 86 ("I can't read them very well either"); R. 87 ("we're having some difficulty there with reading the handwritten notes"). The ALJ acknowledged, however, that the treating physician's clinical notes were important and relevant evidence, and she kept the record open for Claimant to submit more documentation from Dr. Lichon in light of the fact that neither she nor the medical expert could decipher the bulk of his clinical notes. R. 95. The ALJ directed Claimant's attorney to obtain "a transcript or something that can give us a little bit more of a sense and limitations, maybe have [Dr. Lichon] fill out a medical source statement." *Id.*

After the hearing, Dr. Lichon submitted a supplemental medical source statement (R. 1263-66, Exhibit 25F) and a letter further explaining his relevant clinical findings (R. 1267,

10

Exhibit 26F). In his supplemental letter dated February 16, 2012, Dr. Lichon explained Claimant had organ involvement of the muscles, joints, and brain secondary to lupus. R. 1267. Dr. Lichon further stated Claimant had positive trigger points on her chest, back, and knees indicative of fibromyalgia; tender points in the knees, left hip, feet, and back due to lupus; and decreased cognitive ability secondary to lupus and fibromyalgia. *Id.* Dr. Lichon again reiterated that Claimant was "totally disabled due to collagen disease and lupus and fibromyalgia," and invited the ALJ to call his office if she had any further questions.[2] *Id.*

It is not really accurate for the ALJ to say that Dr. Lichon's opinions lack support in the record when the ALJ acknowledged during the hearing that there were parts of the record that she could not consider because neither she nor the consulting medical expert could read them. In effect, the ALJ acknowledged that Dr. Lichon's notes were relevant evidence but she did not factor that evidence into her analysis or conclusions. Having embarked – correctly, in the Court's view – on an effort to determine whether Dr. Lichon's clinical findings supported his diagnoses, the ALJ then abandoned that effort and defaulted to the conclusion that Dr. Lichon's opinions were not supported by the evidence without acknowledging in her opinion that one of the reasons she apparently reached that conclusion was that neither she nor the consulting medical expert could read the relevant evidence.

---

[2] It is worth noting that Dr. Lichon's letter directly addresses some of the concerns the ALJ and the medical expert raised during the hearing. *See, e.g.,* R. 84 ("I'm looking for a clinical finding of which organ system is involved [sic] by this abnormal lab test."); R. 87 ("Okay, so the question is then whether these clinical findings that are difficult to read, if there is involvement of any two organs then I may need to go back and consider 14.02?"). Dr. Lichon's supplemental letter referenced the involvement of at least two organs. R. 1267, Exhibit 26F. Dr. Lichon's letter also mentioned the location of "positive trigger points" . . . indicative of active Fibromyalgia" on Claimant's "chest/Back and knees." *Id.* Dr. Jilhewar mentioned the lack of documentation of trigger points or organ involvement in his hearing testimony. R.67, 84.

11

The ALJ, therefore, both failed to consider all the relevant evidence in the record and did not adequately develop the record. While an ALJ does not have to complete a written evaluation of every piece of evidence in the record, she does have an obligation to build an accurate and logical bridge from the evidence to her conclusion. *See Pepper v. Colvin,* 712 F.3d 351, 362 (7th Cir. 2013); *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ's explanation of the bases for her conclusions in this case falls short of the required minimum level of articulation of a logical bridge that is required to discount so substantially a long-time treating physician's opinion.

Further, addressing the new evidence submitted after the hearing, the ALJ determined -- without consulting Dr. Jilhewar -- that while Dr. Lichon's supplemental letter and medical source statement provided some support to narrow Claimant's RFC, this new evidence also "does not reflect specific laboratory signs and clinical findings that would contradict Dr. Jilhewar's opinion or my ultimate RFC opinion." R. 32. This is the ALJ playing doctor. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The only person who can say whether the new evidence would have changed his opinion is Dr. Jilhewar. The ALJ characterized Dr. Lichon's post-hearing submissions as "new probative evidence . . . received after the state agency medical consultants formulated their opinions, and which they consequently never had the opportunity to review and evaluate." R. 31. Although the ALJ used this new evidence, in her words, to "further narrow [. . .] the claimant's residual functional capacity" (R. 31), it is Dr. Jilhewar who should have reviewed and considered the new evidence and then opined whether Dr. Lichon provided sufficient explanation and/or clarification of his clinical findings sufficient to support his opinions.

For these reasons, the Court cannot conclude that the ALJ's opinion was based on consideration of *all* relevant evidence with greater weight given to opinions supported by objective clinical findings. The evidence submitted by Dr. Lichon post-hearing was relevant to Claimant's disability determination because its purpose was to make sense of the illegible clinical notes in the record. The ALJ, however, did not give Dr. Jilhewar the opportunity to review and consider the new evidence and make his own determination as to whether the new evidence changed his opinion as to what Claimant is capable of doing. Nor did the ALJ pursue Dr. Lichon's offer for the ALJ to call him if she still had any questions after she received his supplemental submissions. Therefore, the ALJ's disability and residual functional capacity determinations ultimately were based in no small part on (1) the opinion of a medical expert who could not read the treating physician's clinical notes, and therefore, did not understand, and was unable to review, Claimant's treatment record as a whole, and (2) the ALJ's own opinion of "new probative evidence . . . received after the state agency medical consultants formulated their opinions . . . ." (R. 31). By failing to give the new evidence submitted post-hearing to the medical expert for consideration and failing to seek further clarification from Dr. Lichon concerning his unreadable clinical notes, the ALJ did not adequately develop the record or build a sufficient logical bridge from the relevant evidence to her conclusions.

The Court concludes this is cause for remand in this case. More was required here, as the ALJ herself acknowledged at the end of the hearing, in light of the long treatment relationship between Claimant and Dr. Lichon. The ALJ should have continued her investigation of whether Dr. Lichon's clinical findings supported his medical opinion that she began after the hearing rather than abandon it in mid-stream. The Court need not go further in analyzing Claimant's

13

other arguments to reverse and remand this case for additional proceedings consistent with this Memorandum Opinion and Order.

The Court reaches this conclusion cognizant that it is Claimant's burden to bring forth evidence that supports her application for benefits. Claimant attempted to meet that burden here by introducing into evidence all of Dr. Lichon's treatment records and then by having Dr. Lichon supplement the record after the hearing in an attempt to satisfy the ALJ's legitimate request for more information from him. Under the particular circumstances of this case, it was not sufficient for the ALJ not to follow up again with Dr. Lichon with respect to the question she found needed more explanation at the conclusion of the hearing, namely, whether Dr. Lishon's unreadable clinical notes supported his opinions. It may be that, upon remand, the ALJ will conclude that Dr. Lichon's clinical findings do not, in fact, support his opinions. Or maybe she will conclude that they do support the doctor's opinions. All the Court holds today is that it is not sufficient in this case for the ALJ to say that the treating doctor's clinical findings do not support his opinion when neither she nor the consulting medical expert could read those findings and the consulting expert also did not have the benefit of seeing the additional material ("new probative evidence" (R. 31)) submitted by the treating physician after the hearing.

## V. CONCLUSION

For the reasons set forth above, Claimant's Motion for Summary Judgment [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 18] is

14

denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

						_____
						Jeffrey T. Gilbert
						United States Magistrate Judge

Dated: December 30, 2015